IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE, | ) | Civil No.: 07-1496 JDB |
| Plaintiff, | ) | |
| | ) | UNITED STATES' OPPOSITION |
| v. | ) | TO PLAINTIFF'S APPLICATION FOR |
| | ) | TEMPORARY RESTRAINING ORDER |
| SCOTT D. HAMMOND, DEPUTY | ) | AND PRELIMINARY INJUNCTION TO |
| ASST. ATTORNEY GENERAL, | ) | ENJOIN PUBLIC DISCLOSURE OF |
| ANTITRUST DIVISION, DEPT. OF | ) | MATTERS OCCURRING BEFORE |
| JUSTICE; LISA M. PHELAN, CHIEF | ) | THE GRAND JURY |
| NATIONAL CRIMINAL | ) | |
| ENFORCEMENT SECTION; | ) | |
| MARC SIEGEL, DIRECTOR | ) | |
| OF CRIMINAL ENFORCEMENT; | ) | |
| MARK R. ROSMAN, ASST. CHIEF | ) | |
| | ) | |
| Defendants. | ) | |

## I. PRELIMINARY STATEMENT

A British Airways ("BA") executive ("Applicant") who was excluded by name from the

non-prosecution and cooperation provisions of a corporate plea agreement between the United

States and BA seeks to have his name redacted from that agreement, thereby denying the public

and victims of the subject antitrust conspiracy access to all of the agreement's terms.

Applicant's argument that publication of an unredacted corporate plea agreement that carves out

certain executives from its cooperation and non-prosecution terms brands him as an unindicted

co-conspirator or the subject of an ongoing investigation has been considered and rejected by

another court in a nearly identical case.

Applicant has not been named as an unindicted co-conspirator in an indictment or any

1

other document, has not been accused of engaging in any unlawful conduct, and has not been identified as a subject of any investigation.  Thus, Applicant's due process rights are not implicated.  As a result, he is not likely to succeed on the merits and cannot demonstrate a likelihood of irreparable harm.

By contrast, the public and press have a constitutional right of access to criminal court proceedings, including the entire plea agreement between the United States and BA (the "BA Plea Agreement"), the victims of the subject conspiracy have a statutory right of access to the plea agreement in this matter, and the United States and BA, as parties to the BA Plea Agreement, have an interest in publicly defining with as much specificity as possible the terms of their contract.  As such, the balance of hardships and the public interest weigh heavily in favor of the public filing of the BA Plea Agreement without redaction.  Accordingly, this Court should deny Applicant's application for temporary restraining order and preliminary injunction.

## II.  BACKGROUND

It has long been the policy of the Department of Justice Antitrust Division (the "Division") to identify by name individual executives who are not included within, and are thus "carved out" of, corporate plea agreements.[1]  This policy has been followed for many years in dozens and dozens of corporate plea agreements filed by the Division in districts across the country, including the District of Columbia.  *Id.*  Hundreds of individuals have been named as carve-outs in corporate plea agreements, and none of them consented to it.  *Id.*  Moreover, no court has ever required the Division to file a plea agreement under seal or required redaction of

---

[1]  *See* accompanying Declaration of Brent Snyder in Support of the United States' Opposition to Application for Temporary Restraining Order ("Snyder Decl."), ¶ 2.

the names of individual carve-outs.  *Id.*

In practice, carving an individual out of a corporate plea agreement is accomplished merely by excluding the individual from the cooperation and non-prosecution provisions of the corporate plea agreement.  In the BA Plea Agreement, which has been provided to Hon. John D. Bates, those provisions state, in relevant part:

> 12.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo and/or passenger transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding").  The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:

> \* \* \*

> (b) using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States, but excluding [Name], [Name], [Name], [Name], [John Doe], [Name], [Name], [Name], [Name], and [Name], including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

> \* \* \*

> 15.        The United States agrees to the following:

> (a)  Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was

3

> acting as a director, officer, or employee of the defendant or its subsidiaries
> that was undertaken in furtherance of an antitrust conspiracy involving the
> sale of international air cargo transportation services to and from the United
> States and/or passenger transportation services between the United States and
> the United Kingdom or undertaken in connection with any investigation of
> such a conspiracy ("Relevant Offense"), except that the protections granted
> in this paragraph shall not apply to [Name], [Name], [Name], [Name], [John
> Doe], [Name], [Name], [Name], [Name], and [Name].

This carve-out language does not identify Applicant as an unindicted co-conspirator, does not

name him as a subject of the ongoing investigation, and does not allege that he has participated

in any illegal conduct.  The language simply states that the terms of the contractual agreement

between the United States and BA do not apply to him.

## III.  ANALYSIS

In order to be entitled to a temporary restraining order and preliminary injunction,

Applicant must establish (1) a substantial likelihood that he will prevail on the merits; (2) he will

suffer irreparable harm if the injunctive relief does not issue; (3) the balance of hardships favors

issuance of an injunction; and (4) the public interest favors issuance of an injunction.

*Boehringer Ingelheim Corp. v. Shalala*, 993 F. Supp. 1 (D.D.C. 1997).  Applicant cannot meet

this heavy burden.  Not only is Applicant unlikely to prevail on the merits, but he cannot

demonstrate irreparable harm or that the public interest and balance of the hardships weigh in

favor of the requested injunctive relief.

Applicant's request for relief boils down to the argument that publication of the

unredacted BA Plea Agreement will brand him either as an unindicted co-conspirator or the

subject of a grand jury investigation.  Not only has this very argument been previously advanced

and rejected in a case that is very similar to this one, but the interests claimed by Applicant

cannot overcome the countervailing interests of the public, the press, the victims of the subject

conspiracy, and the parties to the BA Plea Agreement in making its full terms public.

A.    **The Long-Standing and Judicially-Upheld Practice of Publicly Filing Unredacted Corporate Plea Agreements Does Not Violate the Rights of Individuals Expressly Carved Out of those Agreements or Federal Rule of Criminal Procedure 6(e).**

The Division's policy of naming carve-outs in corporate plea agreements has withstood not only internal departmental review[2] but also has been recently upheld in court. In *United States v. Crompton Corp.*, 399 F. Supp. 2d 1047, 1048 (N.D. Cal. 2005), the court considered a request, making the same arguments and relying on the same line of cases as Applicant, that the name of an executive "carved out" of a plea agreement, in the same manner as here, should be redacted. As the court stated, "the sole issue before the Court is whether listing an unindicted person's name in a plea agreement is the functional equivalent of listing an unindicted coconspirator's name in an indictment." *Id.* The court concluded it was not:

> The Plea Agreement is nothing more than a contract which identifies the mutual understanding of the parties and provides guidance to other employees on how to assert their constitutional rights. It imputes no guilt or criminal activity to those named as exempt from the non-prosecution protections.

399 F. Supp. 2d at 1050 (emphasis added).

The *Crompton Corp.* case arose out of an investigation of the rubber chemicals industry. As part of that investigation, the Division entered into a plea agreement with the Crompton Corporation, which carved three Crompton executives out of its terms. *Id.* One of the carve-outs, Vincent Calarco, was Crompton Corporation's president and chief executive officer. *Id.*

---

[2] Applicant requested the opportunity to "appeal" the Division's carve-out policy to the Office of the Deputy Attorney General ("DAG"). They were permitted to do so, and their appeal was denied. *See* Snyder Decl. at ¶ 3.

Crompton Corporation moved to redact its CEO's name from the plea agreement.[3]  Like Applicant, the corporation principally argued that identification of Calarco as a "carve-out" "would be the functional equivalent of publishing the name of an unindicted co-conspirator," thereby implicating Calarco's due process rights.  *Id.*  The court in *Crompton Corp.* unequivocally rejected this argument on grounds that are fully applicable here:

> The underlying policy for redacting an unindicted co-conspirator's name from an indictment is to avoid the "very real stigmatization" that they might suffer. [Citation].  Moreover, since the government will not bring an indictment against the coconspirator, naming them serves no purpose other than to publicly smear the individual who "has not been provided a forum in which to vindicate his rights."  *In re Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981).  As such, naming the coconspirator without an indictment denies them due process rights embodied in the Fifth Amendment.  *Application of Jordan*, 439 F. Supp. 199, 209 (S.D. W.Va. 1977).
>
> But such policy implications are not present when a plea bargain is signed.  The Plea Bargain here makes no allegations that those named as exempt from the prosecutorial immunity are coconspirators; nor has Calarco been indicted or listed in any other indictment flowing from the investigation.  The contract is between two parties; its function is to define with as much specificity as possible the obligations and benefits upon which the two parties have agreed.  Those named as exempt from the non-prosecution guarantee could have been named because they had made known in pre-filing negotiations that they would not cooperate with the government even with such a guarantee.  The sole purpose of listing Calarco's name is to indicate that the non-prosecution protection of [the] Plea Agreement does not apply to him and nothing more.  The Plea Agreement does not allege criminal activity on Calarco's part nor does it implicate Calarco in any wrong-doing.

---

[3]  Crompton Corporation moved to redact Calarco's name in response to the United States' motion to unseal the plea agreement, which had been inadvertently sealed.  Crompton Corporation did not oppose the United States' motion to unseal.

6

*Id.* at 1049.[4]  The court's analysis in *Crompton Corp.* applies fully to Applicant in this case and correctly recognizes that there are reasons, other than being an unindicted co-conspirator, which may result in an individual being carved out of a corporate plea agreement.[5]  For instance, the Division will not extend the contractual benefits of a corporate plea agreement to individuals who refuse to cooperate with the Division's investigation, against whom the Division is still developing evidence, or whom the Division has been unable to locate.  The Division has frequently given speeches to the defense bar to publicize the different circumstances that will support carve-out decisions, and one purpose of such speeches has been to make clear that carve-outs can and do include more than just unindicted co-conspirators.

Given the number of different reasons that might have caused the United States to carve Applicant out of the BA Plea Agreement, the actual bases for the Unites States' decision to carve him out are of no import to this motion.  The unredacted plea agreement does not provide that information and therefore provides no basis to conclude that Applicant was carved out because he is an unindicted co-conspirator or grand jury subject.  As a result, Applicant's due process rights

---

[4]  The court held that these facts negated all of the cases cited by Crompton Corporation, which involved only "an actual indictment that has included the name of an unindicted coconspirator."  *Id.*  Applicant relies on the same cases here, all of which relate to the **express** identification of individuals as unindicted co-conspirators.  No such identification has occurred here; nor is it the only or obvious implication of being carved out of the BA Plea Agreement.

[5]  To the extent the Applicants attempt to distinguish *Crompton* on the grounds that the plea agreement there was mistakenly sealed from the outset, *see, e.g.,* Application at 11, their effort is unpersuasive.  The *Crompton* court only considered this circumstance – that the redaction request was "merely taking advantage of the fortuitous situation" – as an alternative reason for denying the request assuming, *arguendo,* that the unindicted co-conspirator line of cases applied.  *Id.* at 1050-51.  The court's principal holding, however, was that that line of cases did not apply because the "Government has not identified Calarco as an 'unindicted coconspirator.'"  *Id.* at 1050.

are not implicated by publication of the BA Plea Agreement, and he will suffer not irreparable as a result thereof.

      1.      **The *Crompton Corp.* Rationale Applies Equally to Applicant's Argument Under Federal Rule of Criminal Procedure 6(e).**

      Applicant's argument that Federal Rule of Criminal Procedure 6(e), which cloaks in secrecy "matter[s] occurring before the grand jury," requires redaction of the BA Plea Agreement is a variation of his due process argument and fails for the same reasons.  Just as being carved-out is not tantamount to being identified as an unindicted co-conspirator, it is not tantamount to being identified as the subject of an ongoing grand jury investigation.  *See Crompton Corp.*, 399 F. Supp. 2d at 1049.  As such, the rationale of *Crompton Corp.* applies equally to Applicant's arguments under Rule 6(e).

      The fault in Applicant's argument is the assumption that being carved out is susceptible only to one implication – that he is a subject of an ongoing investigation.  As discussed above, there are a variety of reasons, unrelated to being an unindicted co-conspirator or the subject of an ongoing investigation, that will support carving an individual out of a corporate plea agreement.  *Any* corporate employee – whether or not an unindicted co-conspirator; whether or not a subject of the investigation – who refuses to cooperate with the government's investigation, for whatever purpose, is subject to being carved out.[6]  *Any* former corporate employee with relevant

---

      [6] Applicant repeatedly suggests that only uncooperative *subjects* are carved out of Division plea agreements.  *See* Application at 4, 14.  This is incorrect.  Any corporate employee – even those who are mere witnesses but refuse to cooperate in order to protect bosses, protect friends, avoid inconvenience, etc. – are subject to being carved.  Simply put, any person who refuses to cooperate with the government's investigation, no matter their "status," cannot expect to receive the benefits of a contractual plea agreement between the United States and his or her current or former employer.

knowledge that the United States has been unable to contact – whether or not an unindicted co-conspirator; whether or not a subject of the investigation – is subject to being carved out. As noted above, the Division has widely publicized through speeches and papers, many of which are publicly available on the Division's website, that there are a variety of reasons that can cause one to be carved out of a corporate plea. In doing so, the Division has eliminated any suggestion that only co-conspirators or subjects are carved-out of corporate plea agreements.[7]

Identifying carve-outs to a corporate plea agreement is not remotely similar to the factual circumstances that have warranted the past application of Rule 6(e). This case is hardly comparable to cases cited by Applicant, such as *Finn v. Schiller*, 72 F.3d 1182 (4th Cir. 1996), where a prosecutor publicly filed an 83-page statement alleging that an unindicted person "conspired to commit mail, wire, and securities fraud in acquiring railroad stock," or *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985), where a newspaper sought access to a bill of particulars, which the United States was ordered to provide to the defendants in a conspiracy case, naming unindicted co-conspirators and others who participated in the illegal conduct. The other

---

[7] Applicant cites *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) for the proposition that "Rule 6(e) prohibits disclosure of the identities of *'those who could conceivably be considered as unindicted co-conspirators'* in whatever manner it is disclosed." Application at 10. *Smith* says no such thing. *Smith* dealt with a press request for access to a bill of particulars, which was filed in response to a court order requiring the government to "provide [the defendants] the names of unindicted co-conspirators" and which contained the names of unindicted co-conspirators and others actually involved in a conspiracy. *Id.* at 1106. Public disclosure of "the United States Attorney's broadly conceptualized list of unindicted co-conspirators" would have expressly identified those people that the United States named as unindicted co-conspirators and directly involved in the subject conspiracy. *Id.* at 1115. *Smith* is hardly comparable to this case. Publication of the BA Plea Agreement will not link Applicant to any criminal conduct or otherwise result in a comparable identification.

9

cases upon which Applicant relies are no more comparable.[8]  The BA Plea Agreement does no more than identify the individuals who are not covered or bound by its terms.   The cases cited by Applicant demonstrate that much more is needed to invoke the secrecy provision of Rule 6(e).

   **2.    The United States Attorneys' Manual Does Not Prohibit Publication of the BA Plea Agreement.**

   Applicant's final argument – that the United States Attorneys' Manual ("USAM") prohibits the Division's carve-out policy – also is without merit.  This argument fails because (1) the cited provisions of the USAM are inapposite; (2) the Department of Justice's DAG denied an appeal by Applicant; and (3) the USAM, by its very terms, provides Applicant with no basis for relief.

   Applicant's citations to the USAM are inapposite because every provision contained in the USAM addressing the disclosure of a third party's identity proscribes against disclosing third-party ***wrongdoers*** (*see, e.g.*, USAM § 9-27.760).  No language in the BA Plea Agreement describes Applicant as a wrongdoer.  Moreover, even had Applicant been identified as a wrongdoer, USAM § 9-16.500, which applies to plea and sentencing proceedings, allows the

---

   [8] All of the other cases cited by Applicant either involve express identification of an individual as an unindicted co-conspirator or relate to the production of actual grand jury materials.  *See, e.g., United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) (express disclosure of actual grand jury materials); *Fund for Constitutional Government v. National Archives & Records Serv.*, 656 F.2d 856 (D.C. Cir. 1981) (FOIA request for prosecutorial materials that specifically named grand jury witnesses, summarized testimony, and discussed direction of the grand jury's investigation); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006) (judicial opinion was redacted because it summarized submissions by a prosecutor that provided detailed explanation of a grand jury's investigation to justify an order compelling testimony by journalist); *Lucas v. Turner*, 725 F.2d 1095, 1107 (7th Cir. 1984) (inmate requested production of grand jury transcripts and materials); *DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16 (2d Cir. 1992) (disclosure of tax records subpoenaed by grand jury); *United States v. Phillips*, 843 F.2d 438 (11th Cir. 1988) (same).

identification of a third party if there is a "significant justification."  In the corporate plea

agreement setting, the public's right to know what agreements its government is entering with

criminal defendants, the victim's right of access to all the terms of the plea agreement under the

Crime Victims' Rights Act, and the strong governmental interest in avoiding contractual

ambiguity, *see, infra,* pp. 9-13, would create a significant justification permitting such a

disclosure.

As mentioned in *supra* footnote 2, Applicant "appealed" the Division's carve-out policy to

the Department of Justice DAG.  The DAG denied his appeal.

Finally, Applicant cannot use the USAM to create a basis for redacting his name.  The

USAM specifies that it "is not intended to, does not, and may not be relied upon to create any

rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal."

USAM § 1-1.1.

**B.    The Balance of Hardships and the Public, Victims', and Parties' Interest in Publication of the BA Plea Agreement Without Redaction Far Outweigh Applicant's Interests in Redaction.**

Given that being carved out does not implicate any due process rights, Applicant is left

only to claim that publication of the BA Plea Agreement will harm his reputation.[9]  *Crompton*

*Corp*. holds that no such harm results from the publication of the carve-outs in a corporate plea

agreement:

> The Plea Agreement is nothing more than a contract which
> identifies the mutual understanding of the parties and provides

---

[9]  To the extent that Applicant also claims occupational harm, it should be noted that he is still employed by BA.  Because BA already knows that Applicant has been carved out of the BA Plea Agreement and why, Applicant would be in no worse position as a result of publication of that agreement.

guidance to other employees on how to assert their constitutional rights. *It imputes no guilt or criminal activity to those named as exempt from the non-prosecution protections.*

399 F. Supp. 2d at 1050 (emphasis added).

Conversely, the public, the press, victims of the subject conspiracy, and the parties to, and beneficiaries of, the BA Plea Agreement all have significant interests in publication of that agreement without redaction. The public has a First Amendment right of access to court proceedings and documents, including the plea agreement in this case. For victims, the right of access to the BA Plea Agreement is guaranteed by statute. For the parties to, and beneficiaries of, the BA Plea Agreement, an interest in contractual clarity justifies publication of the unredacted agreement. All of these are superior to any interests Applicant can legitimately claim and dictate that the BA Plea Agreement be publicly filed, without redaction.

> **1.** **The Public Has a Constitutional Right to Know the Terms of the BA Plea Agreement.**

"[T]he first amendment protects public access to an aspect of court proceedings if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct." *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991). "[P]lea agreements have traditionally been open to the public and public access to them 'enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." *Id.* (citations omitted). Thus, the first amendment provides a right of access to plea agreements and creates a "presumption of openness [that] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.*

In this case, the public's and the press' right of access under the constitutional and

12

common law to the BA Plea Agreement – including who is subject to its cooperation and conditional non-prosecution terms – is not overcome in this case by Applicant's interests. *Crompton Corp.*, 399 F. Supp. 2d at 1051.  This right of access trumps any interests Applicant has in redaction because "the public interest as dictated by the First Amendment requires the Plea Agreement be made available to the public in its entirety.  Absent a compelling interest, the First Amendment grants the public and the press access to court proceedings and documents, including plea agreements." *Id.* (citing *Oregonian Publ'g Co. v. U.S.D.C. for the Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990)).

Public confidence in the legitimacy and proper functioning of the criminal justice system is of paramount public importance.  If this court conceals some of the terms of the BA Plea Agreement the government entered with a corporate defendant by requiring redaction, members of the public and victims of BA's crime would naturally question the fairness and transparency of the criminal plea and sentencing and whether their government had bargained away justice.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 570 (1980) (identifying "significant community therapeutic value" from open criminal proceedings); *United States v. Raybould*, 130 F. Supp. 2d 829, 833 (N.D. Tex. 2000) ("Disparate sentencings based on reasons and proceedings that are concealed from public view inevitably will raise questions about the basic fairness of the sentencing process.").  It is for this reason that the "cherished policy of our nation" is that criminal proceedings, including plea agreements, be "open to the view of the press and the public." *Raybould*, 130 F. Supp. 2d at 833.

13

2.      **The Crime Victims' Rights Act Entitles Victims to Access to the BA Plea Agreement.**

Applicant's request to redact his name from the BA Plea Agreement directly conflicts with the dictates of the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771.  *See Crompton Corp.*, 399 F. Supp. 2d at 1051.  That statute provides that, in any court proceeding involving an offense against a crime victim, the court "shall ensure" that the crime victim is afforded the "right not to be excluded" from any public court proceeding.  18 U.S.C. § 3771(a)(2-3) & (b).  Government attorneys may assert the access rights on behalf of crime victims.  18 U.S.C. § 3771(d)(1); *see United States v. Marcello*, 370 F. Supp. 2d 745, 746 (N.D. Ill. 2005).

"Essentially, a judge conducting a public proceeding involving a crime may not close the courtroom door to a crime victim who seeks entry but has no obligation to ensure the victim actually arrives there."  *United States v. Turner*, 367 F. Supp. 2d 319, 332 (E.D.N.Y. 2005); *see also Marcello*, 370 F. Supp. 2d at 748-50 (discussing victims' right "to be reasonably heard at any public proceeding" involving criminal plea).  Under the Act, a "crime victim" means "a person directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. § 3771(e).[10]

As *Crompton Corp.* held, the Crime Victims' Rights Act requires that the BA Plea Agreement be filed publicly without redaction.  399 F. Supp. 2d at 1051.  The Act plainly applies

---

[10]  Furthermore, before making a determination that a victim can be excluded from any court proceeding, the court "shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding.  The reasons for any decision denying relief under this chapter shall be clearly stated on the record."  18 U.S.C. § 3771(b).  If the district court denies relief sought under the Act, the movant may petition for a writ of mandamus, which shall be decided by the Court of Appeals within 72 hours after filing.  18 U.S.C. § 3771(d)(3).

here because BA is pleading guilty to a federal offense and the BA Plea Agreement is part of the

plea proceeding.  *See* 18 U.S.C. § 3771(a)(4); *see also* 28 C.F.R. § 50.9(a) (setting forth

guidelines for "open judicial proceedings" to include "plea proceedings" and "portions thereof");

*United States v. Alcantara*, 396 F.3d 189, 198 (2d Cir. 2005)  (Sentencing proceedings are

"extremely significant to victims of crime, to family members of victims, and to members of the

community in which the crime occurred.").[11]

### 3. The Need for Contractual Precision Requires That Individuals' Names Be Disclosed in Corporate Plea Agreements.

The BA Plea Agreement identifies individuals by name for a specific reason: to avoid

ambiguity in a critical contractual provision.  "Plea agreements are contractual in nature and are

measured by contract law standards," and it is the responsibility of the government to ensure

contractual precision in plea agreements.  *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th

Cir. 1993); *see also United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000), *citing* 5 Wayne

R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure, § 21(d), at 57 (2d ed. 1999)

("Constitutional and supervisory concerns require holding the Government to a greater degree of

responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.").

The United States and BA negotiated at length over which BA executives were to receive

non-prosecution protections and which were not.  A major benefit to BA and its employees from

the BA Plea Agreement is the certainty that the government will not prosecute the majority of

BA's executives so long as they cooperate.  Yet for BA's employees to make informed decisions

---

[11]  Section 3771 is buttressed by federal regulations setting forth the "vital public interest in open judicial proceedings," including plea proceedings.  28 C.F.R. § 50.9(a); *see Alcantara*, 396 F.3d at 200 n. 9 (2d Cir. 2005) (citing § 50.9(a) as basis for ordering publicly accessible sentencing proceeding).

about their constitutional rights – such as whether to assert the Fifth Amendment right to remain silent – it must be clear who is included in the non-prosecution guarantees and who is not. The only way to achieve that contractual precision is to identify by name those individuals who are not covered by the non-prosecution agreement. To do otherwise could also unnecessarily impede and delay the investigation by causing individuals to experience the unfounded fear that cooperating with investigators could lead to their prosecution. *See* 18 U.S.C. § 3771(a)(8) (Crime victims' right to proceedings "free from unreasonable delay").

To ensure that all employees of a charged company are able to determine their legal status, the Antitrust Division consistently identifies in its corporate plea agreements those individuals not covered by the non-prosecution provisions. As the court in *Crompton Corp.* noted, the Antitrust Division has filed many plea agreements in which individuals were identified in corporate plea agreements as being excluded from non-prosecution provisions. *See Crompton Corp.*, 399 F. Supp. 2d at 1050. In no case has a plea agreement been ordered sealed and no court ordered any of those individuals' names to be redacted or sealed. *See id.*

## IV.  CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny

Applicant's request for issuance of a temporary restraining order and preliminary injunction

enjoining publication of the unredacted BA Plea Agreement in this case.

DATED: August 20, 2007

Respectfully submitted,


BY:    __/s/ Brent Snyder_____
        Mark Rosman, Assistant Chief
        Brent Snyder, Trial Attorney
        Mark Grundvig, Trial Attorney
        Kathryn Hellings, Trial Attorney
        Elizabeth Aloi, Trial Attorney
        U.S. Department of Justice
        Antitrust Division
        1401 H Street, N.W., Suite 3700
        Washington, D.C. 20530
        Tel.: (202) 307-6694
        Fax: (202) 514-6525

        Attorneys for Defendants

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE, | ) | Civil No.: |
| Plaintiff, | ) | |
| | ) | [PROPOSED] ORDER DENYING |
| v. | ) | PLAINTIFF'S APPLICATION FOR |
| | ) | TEMPORARY RESTRAINING ORDER |
| SCOTT D. HAMMOND, DEPUTY | ) | AND PRELIMINARY INJUNCTION TO |
| ASST. ATTORNEY GENERAL, | ) | ENJOIN PUBLIC DISCLOSURE OF |
| ANTITRUST DIVISION, DEPT. OF | ) | MATTERS OCCURRING BEFORE |
| JUSTICE; LISA M. PHELAN, CHIEF | ) | THE GRAND JURY |
| NATIONAL CRIMINAL | ) | |
| ENFORCEMENT SECTION; | ) | |
| MARC SIEGEL, DIRECTOR | ) | |
| OF CRIMINAL ENFORCEMENT; | ) | |
| MARK R. ROSMAN, ASST. CHIEF | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction to Enjoin Public Disclosure of Matters Occurring Before the Grand Jury (the "Application").  Having considered the Application, and Defendants' Opposition thereto, and having concluded that (1) Plaintiff has failed to carry his burden of demonstrating a likelihood of success on the merits, a likelihood of irreparable harm, or that the balance of hardships and the public interest favor the request relief and (2) that *United States v. Crompton Corp.*, 399 F. Supp. 2d 1047 (N.D. Ca. 2005) is on point and applicable, the Court DENIES the Application.

IT IS SO ORDERED.

Dated:  _____, 2007.

_____
Hon. John D. Bates
United States District Court Judge

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I caused a true and correct copy of the foregoing to be served upon the undersigned attorney by facsimile at the address set out below on August 20, 2007 and by First Class mail, postage prepaid, on August 21, 2007:

          Daryl A. Libow
          Joseph J. Reilly
          Sullivan & Cromwell LLP
          1701 Pennsylvania Avenue, N.W.
          Washington, DC 20006
          Tel: 202-956-7650
          Fax: 202-293-6330

          Daniel S. Ruzumna
          Patterson, Belknap, Webb & Tyler
          1133 Avenue of the Americas
          New York, NY 10036
          Tel: 212-336-2034
          Fax: 212-336-1205

DATED:      August 21, 2007 at Washington, D.C.


                    /s/ Brent Snyder
                Brent Snyder

19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN DOE,<br>　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>SCOTT D. HAMMOND, DEPUTY<br>ASST. ATTORNEY GENERAL,<br>ANTITRUST DIVISION, DEPT. OF<br>JUSTICE; LISA M. PHELAN, CHIEF<br>NATIONAL CRIMINAL<br>ENFORCEMENT SECTION;<br>MARC SIEGEL, DIRECTOR<br>OF CRIMINAL ENFORCEMENT;<br>MARK R. ROSMAN, ASST. CHIEF<br><br>　　　　　　Defendants. | Civil No.: 07-1496 JDB<br><br>DECLARATION OF BRENT SNYDER<br>IN SUPPORT OF OPPOSITION<br>TO PLAINTIFF'S APPLICATION FOR<br>TEMPORARY RESTRAINING ORDER<br>AND PRELIMINARY INJUNCTION TO<br>ENJOIN PUBLIC DISCLOSURE OF<br>MATTERS OCCURRING BEFORE<br>THE GRAND JURY |

I, Brent Snyder, hereby declare as follows:

1.　　　I am an attorney with the United States Department of Justice, Antitrust Division

(the "Division") in Washington, D.C.  I have personal knowledge of the matters set forth herein

and, if called as a witness, could and would testify competently thereto.

2.　　　It has long been the policy of the Division to identify by name individual

executives who are not included within, and are thus "carved out" of, corporate plea agreements.

I am informed and believe that this policy has been followed for many years in dozens and

dozens of corporate plea agreements filed by the Division in districts across the country.  I

personally worked on another matter that resulted in the public filing of a corporate plea

agreement, with carve-outs, in the District of Columbia.  I am informed and believe that

1

hundreds of individuals have been named as carve-outs in the Division's corporate plea agreements, and none of them consented to it.  Moreover, I am informed and believe that no court has ever required the Division to file a plea agreement under seal or required redaction of the names of individual carve-outs.

     3.     I am informed and believe that upon being informed that the Division's long-standing policy of naming carve-outs in corporate plea agreements would apply to the British Airways' Plea Agreement, counsel for Plaintiff requested the opportunity to "appeal" the application of this Division policy to the Department of Justice, Office of the Deputy Attorney General.  He was permitted to do so, and his appeal was denied.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of August 2007 at Washington, D.C.

                                ____/s/ Brent Snyder_____
                                Brent Snyder

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing to be served upon

the undersigned attorney by facsimile at the address set out below on August 20, 2007 and by

First Class mail, postage prepaid, on August 21, 2007:


Daryl A. Libow
Joseph J. Reilly
Sullivan & Cromwell LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: 202-956-7650
Fax: 202-293-6330

Daniel S. Ruzumna
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036
Tel: 212-336-2034
Fax: 212-336-1205


DATED:        August 21, 2007 at Washington, D.C.



_____/s/ Brent Snyder_____
Brent Snyder

3