UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-----------------------------------------------------------------------x
JOHN DOE,                                                              :

      Plaintiff,                              :

  -against-                                                    :     Civil No. 07-1496 (JDB)

SCOTT D. HAMMOND, DEPUTY ASST. ATTORNEY   :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL   :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT;  :
MARK R. ROSMAN, ASST. CHIEF
                                                                       :
      Defendants.
                                                                       :
-----------------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION TO ENJOIN PUBLIC DISCLOSURE
OF MATTERS OCCURRING BEFORE THE GRAND JURY**

      In opposing Plaintiff's application for relief, Defendants offer essentially three arguments to justify why their public identification of unindicted third parties in the British Airways plea agreement (the "BA Plea Agreement") should be sanctioned by the Court. First, for legal support, Defendants rely almost exclusively on a district court case out of California, *United States v. Crompton Corp.*, that they concede *did not consider or address the primary basis of Plaintiff's argument—Federal Rule of Criminal Procedure 6(e)*. Second, Defendants argue that, despite the fact that the BA Plea Agreement offers immunity to all current and former employees of British Airways with the exception of Plaintiff and nine other specifically identified individuals, the Agreement should not be read to suggest that Plaintiff is or ever was the subject of a grand jury investigation. Third, Defendants claim that the public and victims have a right to know all terms of the BA Plea Agreement, ignoring the fact that all terms can still

be disclosed even if Plaintiff's name is redacted and ignoring the overwhelming case law holding that the public and victims do not have a right to know matters before the grand jury. Defendants arguments are legally meritless and factually unsupportable. Plaintiff respectfully submits that they should be rejected and the Court should grant a temporary restraining order and preliminary injunctive relief.

## Argument

### I. *Crompton* Did Not Consider or Address Rule 6(e) and Plaintiff's Reliance on *Crompton* Is Misplaced

Defendants devote much of their response to the Northern District of California's decision in *United States v. Crompton Corp.*, 399 F. Supp.2d 1047 (N.D. Cal 2005). Though they argue that "the rationale of *Crompton Corp.* applies equally" to Rule 6(e), Defendants appear to concede, as they must, that the decision simply does not address this rule of grand jury secrecy. Even if *Crompton* were correctly decided with regard to the Fifth Amendment—which we submit it is not—the decision has no precedential value in the interpretation of Rule 6(e)'s applicability. *Crompton* is also distinguishable on the facts of this case.

The *Crompton* court found that the Fifth Amendment did not prohibit disclosing the identity of an unindicted third party in his employer's plea agreement because there was less stigma attached to being identified in a plea agreement than in an indictment. The court did not discuss Rule 6(e) or appear to consider the United States Attorneys' Manual. The fact that the *Crompton* court was apparently not presented with Rule 6(e) is critical since the primary basis for grand jury secrecy was not addressed in any manner.

Rule 6(e) offers broad and more direct protection to unindicted third parties than the Fifth Amendment. Rule 6(e) requires secrecy for any "matter occurring before the grand jury," and protects the identities of those who have been implicated in or whose names have been

raised in a grand jury investigation. *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499-500 (D.C. Cir. 1998) ("This phrase--'matters occurring before the grand jury'--includes not only what has occurred and what is occurring, but also what is likely to occur. Encompassed within the rule of secrecy are 'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'") (citing *Securities & Exchange Commn. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc); *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981)).

Indeed, Rule 6(e) has been cited as demanding secrecy for unindicted third parties before the grand jury in contexts other than just indictments. *See, e.g., United States v. Sells Engineering*, 463 U.S. 418, 421-22 (1983)(government failed to make adequate showing for overcoming Rule 6(e) in request for "all grand jury materials . . . for use in preparing and conducting a possible civil suit against respondents under the False Claims Act"); *Finn v. Schiller*, 72 F.2d 1182, 1189 (4th Cir. 1996) ("Overzealous prosecutors must not be allowed to file sweeping statements of fact alleging violations of various laws by unindicted individuals."); *United States v. Smith*, 776 F.2d 1104, 1113-14 (3d Cir. 1985) (affirming the denial of newspapers' motion for access to a document naming unindicted co-conspirators and those who "*could conceivably be considered* as unindicted co-conspirators") (emphasis added); *Fund for Constitutional Government v. National Archives & Records Serv.*, 656 F.2d 856 (D.C. Cir. 1981) (affirming denial of FOIA request "for information [among other things] . . . discussing the scope, focus and direction of the grand jury investigations").

The overwhelming case law supporting grand jury secrecy under Rule 6(e) has led the Department of Justice to enact policies designed to ensure that grand jury secrecy is strictly

followed. The United States Attorneys' Manual offers a candid admission by the Department of Justice that disclosing the identities of unindicted third parties, absent compelling circumstances, violates Rule 6(e) and that *Crompton*'s rationale does not extend to Rule 6(e). The Manual provides:

> In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third-parties. In the context of *public plea and sentencing proceedings*, this means that, in the absence of some significant justification, it is not appropriate to identify (either by name or unnecessarily-specific description), or cause a defendant to identify, a third-party wrongdoer unless that party has been officially charged with the misconduct at issue. . . .

U.S. Attorneys' Manual § 9-27.760 (emphasis added).[1] Because the BA Plea Agreement is part of British Airways' plea proceeding, Defendants are not permitted to disclose Plaintiff's identity under the Department of Justice's own policies. *See id.* ("Courts have applied this reasoning [*i.e.*, no legitimate purpose in public identification] to preclude the public identification of unindicted third-party wrongdoers in plea hearings, sentencing memoranda, and other government pleadings.") (citing *Finn v. Schiller*, 72 F.3d 1182 (4th Cir. 1996); *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975); *United States. v Anderson*, 55 F. Supp.2d 1163 (D. Kan 1999); *United States v. Smith*, 992 F. Supp. 743 (D.N.J. 1998)).

Even with respect to the Fifth Amendment, the *Crompton* court's reasoning should be rejected. *Crompton* apparently pioneered the wholly unpersuasive argument, which Defendants now adopt, that a "carve out" list "is nothing more than a contract which identifies

---

[1] Defendants contend that the United States Attorneys' Manual does not prohibit their actions here because it applies to only third party wrongdoers. (Def. Opp. at 10). Considering how the BA Plea Agreement refers to the "carved out" individuals, there is little doubt that the public will consider them "wrongdoers." Further, it defies common sense to argue that the Department policy would allow third parties who are not "wrongdoers" to be publicly identified in such a negative manner, but would protect the identities of those suspected of being "wrongdoers." Additionally, Defendants' reliance on the approval of the Deputy Attorney General's Office calls to mind the analogy of the proverbial "fox guarding the henhouse."

the mutual understanding of the parties and . . . imputes no guilt or criminal activity to those named as exempt from the non-prosecution protections." *Crompton*, 399 F.Supp.2d at 1050. For reasons already discussed, common sense belies this baseless assertion. In contrast to the outlier case of *Crompton*, this Court should follow the weightier and better reasoned line of authority, discussed in Plaintiff's Memorandum, which holds that a disclosure such as the one contemplated here would brand Plaintiff a suspected criminal without affording him any forum to contest such accusation.

II.     **Defendants' Argument that There Are Non-Stigmatizing Interpretations of Being Identified on the "Carve Out" List Is Meritless**

Despite the fact that *Crompton* did not address Rule 6(e), Defendants seek to borrow *Crompton*'s rationale for Rule 6(e), arguing that their public identification of Plaintiff on the "carve out" list could be interpreted by the public to mean something other than that Plaintiff is or was before the grand jury. (Def. Opp. at 8). The language of the BA Plea Agreement, however, belies that argument. The immunity section of the Agreement provides:

> 15. The United States agrees to the following:
>
> (a) Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer or employee of the defendant or its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of international air cargo transportation services to and from the United States and/or passenger transportation services between the United States and the United Kingdom or undertaken in connection with any investigation of such a conspiracy ("Relevant Offense"), *except that the protections granted in this paragraph shall not apply to [Name, Name, Name, Name, Plaintiff, Name, Name, Name, Name, Name, and Name].*

(Def. Opp. at 3-4 (citing BA Plea Agreement (emphasis added))). Indeed, the immunity section specifically discusses the "antitrust conspiracy" that was the focus of the grand jury investigation and excludes Plaintiff and nine others by name from the protection given. The only rational interpretation of this paragraph *in the public eye* is that Plaintiff and the others either are unindicted co-conspirators of British Airways or were otherwise before the grand jury in some manner related to the prosecution of British Airways.

Defendants argue that there are two other possible interpretations of Plaintiff's identification in the BA Plea Agreement: they state that "[*a*]*ny* corporate employee . . . who refuses to cooperate with the government's investigation, for whatever purpose, is subject to being carved out," and that "[*a*]*ny* former corporate employee with relevant knowledge that the United States has been unable to contact . . . is subject to being carved out." (Def. Opp. at 8-9 (emphasis in original)). Defendants' argument should be summarily rejected.

First, if an individual has refused to cooperate with the government's grand jury investigation, then that individual *necessarily* was at some point (and potentially still is) "before the grand jury," and entitled to the protections of Rule 6(e). *See* Fed. R. Crim. P. 6(e)(2)(B); *see also United States v. Sells Engineering, Inc.*, 463 U.S. 418, 424 (1983) (grand jury secrecy protects identities of unindicted third parties); *Finn v. Schiller*, 72 F.3d 1182, 1189 (4th Cir. 1996) (grand jury secrecy intended to protect the unindicted); *DiLeo v. C.I.R.*, 959 F.2d 16, 18-19 (2d Cir. 1992) (same); *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) (same). Likewise, if the government is still trying to locate an individual as part of its investigation before the grand jury, that individual too is before the grand jury for purposes of Rule 6(e). Importantly, it is irrelevant whether the allegedly uncooperative individual or the not-yet-located

6

1391090v3

individual was a target, subject or witness before the grand jury; he or she was (and potentially still is) before the grand jury.

Second, Defendants' claims (Def. Opp. at 7-9) that the Antitrust Division's "frequently given speeches to the defense bar to publicize the different circumstances that will support carve out decisions" and that its website should remove any stigma attached to public identification of Plaintiff are frivolous. Even if "the defense bar" may wonder whether Plaintiff was merely uncooperative with the government (which carries a stigma in itself) or was unable to be located, the public—and the Department of Justice's investigation of British Airways has generated significant publicity, especially in England—would believe that Plaintiff was "carved out" from the immunity protection because the Department of Justice believed he was involved in unlawful activities. *See United States v. Smith*, 776 F.2d 1104, 1113 (3d Cir. 1985) ("If published, the sealed list will communicate to the general public that the named individuals, in the opinion of the chief federal law enforcement official of the District, are guilty, or may be guilty, of a felony involving breaches of the public trust.").[2] Thus, the purported "different reasons" for Plaintiff's "carve out" (Def. Opp. at 7) are unrealistic and unconvincing.

Third, Defendants' decision to publicly identify individuals whom it has deemed uncooperative or whom the Department of Justice cannot find is shocking, considering the public stigma attached to being publicly identified in any manner by the Department of Justice. Simply

---

[2] In a footnote, Defendants attempt to distinguish *Smith* on the patently erroneous claim that the disclosure sought there was only of the "names of unindicted co-conspirators and others actually involved in a conspiracy." *Id.* at 9 n.7. As the decision clearly states, the district court "ordered identification of the unindicted co-conspirators," 776 F.2d 1104, 1105, but "the Government filed a two-page document . . . [which] contain[ed] the names of persons who, in the opinion of the United States Attorney, are unindicted co-conspirators in this case or who could conceivably be considered as unindicted co-conspirators." *Id.* at 1106. The Court of Appeals emphasized that it was identification of the second group – of those who "*could conceivably be considered as* unindicted co-conspirators," *id.* at 1113 (emphasis in original) – that "seriously exacerbated the risk of injury which is inherent in any publication of a list of unindicted co-conspirators." *Id.* Plaintiff's explicit designation as someone not immune from future prosecution means that he "could conceivably be considered" an unindicted co-conspirator, especially by a layperson made aware of the "carve out" list. *Smith* therefore applies to Plaintiff's situation and counsels against public disclosure of the list.

7

1391090v3

because Defendants have deemed an individual uncooperative does not mean that that individual did anything wrong. The Fifth Amendment guarantees individuals the right not to incriminate themselves. *See* U.S. Const., Amend. 5. If Defendants have deemed a refusal to speak to the Department of Justice as uncooperative and seeks to punish such individuals in the court of public opinion, such action would violate the Constitution. Similarly, penalizing those whom the United States government cannot find—some of whom may not even know of the government's attempt to find them—defies common sense. In fact, both of the proffered interpretations of being "carved out" of an immunity list are so nonsensical that, if offered to the public, they would likely be dismissed.

### III. NEITHER THE PUBLIC NOR CRIME VICTIMS HAVE A "RIGHT TO KNOW" MATTERS OCCURRING BEFORE THE GRAND JURY

#### A. There Is No Right to Public Access to Grand Jury Investigations

In arguing that the public's right to access to court proceeding outweighs Plaintiff's interests here, Defendants conveniently ignore Rule 6(e) and case law holding that the public does not have a right to know matters before the grand jury. *See, e.g., In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998) ("A settled proposition, one the press does not contest, is this: there is no First Amendment right of access to grand jury proceedings."). Defendants rely on cases providing for general public access to criminal court proceedings, including plea agreements; however, the cited cases do not appear to address Rule 6(e) and presumably did not involve references to unindicted third parties in the plea agreements—a practice that appears to be unique to the Antitrust Division. The cases do not address the relevant issues here and thus are inapposite.

Defendants suggest that avoiding their intended disclosure would undermine "[p]ublic confidence in the legitimacy and proper functioning of the criminal justice system."

(Def. Opp. at 13). But the opposite appears more likely. Grand juries, which serve as checks against potential abuses of the government's power to prosecute, would lose their ability to function if the secrecy provided by Rule 6(e) were not enforced and, consequently, witnesses became hesitant to testify, subjects were encouraged to flee, and the unindicted were publicly branded as suspects.

### B. Crime Victims Do Not Have a Right to Access Matters Before a Grand Jury

Defendants also cite *Crompton* for the proposition that the Crime Victims' Rights Act requires that the BA Plea Agreement be filed without redaction. (Def. Opp. at 14-15). The *Crompton* court reached its finding on this issue, without citing a single authority, reasoning that plaintiffs who brought civil lawsuits against the corporation which pleaded guilty "were directly and proximately harmed as a result of the commission of the antitrust violation [and] [t]herefore, the Court should be particularly sensitive to ensuring they are given full access to the proceedings and the Plea Agreement." 399 F. Supp.2d at 1051. The obvious implication of this statement is that disclosure of the names on a "carve out" list is useful in enabling potential civil plaintiffs to determine whom to sue. Clearly, a disclosure that facilitates the filing of a civil suit against those on a "carve out" list hardly can be said to "impute[] no guilt or criminal activity to those named." *Id.* at 1050. *Crompton*'s logic is, therefore, inconsistent, just as is Defendants' claim that Plaintiff's presence on the "carve out" list does not suggest that he was a subject of the grand jury investigation.[3] Further, the Crime Victims' Rights Act does not, of course, trump Rule 6(e)'s protection of grand jury secrecy.

---

[3] Defendants also argue that "the only way to achieve ... contractual precision is to identify by name those individuals who are not covered by the non-prosecution agreement." (Def. Opp. at 15). This argument is just wrong. Besides the fact that Defendants offer no reason why such identification must be made public, they also make no mention of Plaintiff's point that there are at least two ways of communicating the contents of the "carve out" list to those entitled to that information without violating Rule 6(e). (*See* Plaintiff's Mem. of Law at 9, 15). Further, Defendants do not and cannot cite any authority to suggest that "contractual precision" trumps grand jury secrecy.

## Conclusion

For all of the foregoing reasons and the reasons outline in his earlier submissions, Plaintiff respectfully requests that the Court grant his application.

Dated: August 21, 2007

                        Respectfully Submitted,

                        PATTERSON BELKNAP WEBB & TYLER LLP

                        *[signature]*

                        By: Daniel S. Ruzumna (DC Bar No. 450040)
                        1133 Avenue of the Americas
                        New York, New York 10036
                        (212) 336-2034

                        *Attorneys for Plaintiff*

1391090v3

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2007, I caused a true and correct copy of the foregoing submission be served by way of attachment to an email message upon the following:

>Scott D. Hammond
>Lisa M. Phelan
>Marc Siegel
>Mark R. Rosman
>Brent Snyder
>United States Department of Justice
>National Criminal Enforcement Section
>1401 H Street, N.W., Suite 3700
>Washington, DC  20530

_____
Daniel S. Ruzumna