## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

        v.

SCOTT D. HAMMOND, Acting Assistant
Attorney General Antitrust Division, U.S.
Department of Justice, et al.,

        Defendants.

Civil Action No. 07-1496 (JDB)

### MEMORANDUM OPINION

This case arises out of the plea agreement reached by the Department of Justice Antitrust

Division ("DOJ") and British Airways PLC to resolve alleged criminal violations of the Sherman

Act, 15 U.S.C. § 1.  See United States v. British Airways PLC, Cr. No. 07-183 (D.D.C.).  The

plea agreement provides immunity for the offenses described in the agreement for all British

Airways employees except for ten employees identified by name (referred to as the "carve out"

employees).

Eight British Airways employees, proceeding under John Doe pseudonyms, challenge

disclosure of their names in the agreement as a violation of grand jury secrecy under Fed. R.

Crim. P. 6(e) and their right to due process under the Fifth Amendment, based on the premise

that public disclosure of their names in the plea agreement will effectively label them unindicted

co-conspirators and convey that they are or were the subject of a grand jury investigation and did

not cooperate with the government.   The first John Doe, the plaintiff in this action, filed an

application for a temporary restraining order and permanent injunction on August 20, 2007,

requesting that defendants be enjoined "from publicly identifying plaintiff in any manner that

explicitly or implicitly discloses that Plaintiff is an unindicted co-conspirator of British Airways

or is or was otherwise an unindicted subject of a grand jury investigation." See Pl.'s Mem. at 18. Plaintiff requests that this be accomplished by ordering the government to redact his name from the version of the plea agreement that will be filed in open court, or by directing that the plea agreement be redrafted to omit the names of the individuals excluded from the grant of immunity under the agreement. Id. Seven other British Airways employees, proceeding under the pseudonyms "John Does 2-5," "John Doe 6" and "John Does VII and VIII" have sought leave to intervene under Fed. R. Civ. P. 24(b)(2), seeking substantially the same relief on the same grounds proffered by plaintiff. See Joint Mot. by John Does 2-5 for Leave to Intervene (submitted Aug. 21, 2007); Mot. for Leave to Intervene of John Doe #6; Mot. to Intervene by John Does VII and VIII. The Court will thus consider the application for emergency injunctive relief as having been made by the intervenors as well and will refer to plaintiff and the John Doe intervenors collectively as "movants." The motion has now been fully briefed, and is ready for decision.[1] A careful review of the Information, the plea agreement, and statements attributed to DOJ confirms that none of the documents -- alone, or collectively -- expressly or impliedly identifies the movants as co-conspirators or as the subjects of a grand jury investigation. Therefore, the application will be denied.

### STANDARD OF REVIEW

To prevail on an application for a temporary restraining order or preliminary injunction, a plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable harm absent the relief requested; (3) that other interested parties will not be

---

[1] For ease of reference, the Court will refer to plaintiff's memorandum in support of application for a temporary restraining order and permanent injunction as "Pl.'s Mem." and the government's response as "Def.'s Mem."

harmed if the requested relief is granted; and (4) that the public interest supports granting the
requested relief.  Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004); Katz v. Georgetown
Univ., 246 F.3d 685, 687-88 (D.C. Cir. 2001); Taylor v. Resolution Trust Corp., 56 F.3d 1497,
1505-06 (D.C. Cir. 1995); Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559
F.2d 841, 843 (D.C. Cir. 1977).  These four factors should be balanced, and a "particularly
strong" showing in one area can justify an injunction "even if the showings in other areas are
rather weak." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir.
2006).  However, if a plaintiff has no likelihood of success on the merits, inquiry into the
remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone.
See Trudeau v. FTC, 456 F.3d 178, 182-83 n.2 (D.C. Cir. 2006) (noting that a court may not
issue a preliminary injunction where the plaintiff has no likelihood of success on the merits).

## DISCUSSION

Rule 6(e)(2) provides that an attorney for the government "must not disclose a matter
occurring before the grand jury."  The phrase "matter[s] occurring before the grand jury"
encompasses "'not only what has occurred and what is occurring, but also what is likely to occur,
including 'the identities of witnesses, . . . the strategy or direction of the investigation . . . and the
like.'" In re Sealed Case No. 99-3091, 192 F.3d 995, 1001 (D.C. Cir. 1999) (quoting In re
Motions of Dow Jones & Co., 142 F.3d 496, 500 (D.C. Cir. 1998)).

Movants contend that the necessary implication of identifying the carve out employees as
exempt from the grant of immunity is that they remain a subject of an ongoing grand jury
investigation or that the carve out employees were a subject of a grand jury investigation and
were considered uncooperative.  Pl.'s Mem. at 3.  The fatal flaw in this argument is that the
documents they rely upon -- the Information filed against British Airways, the plea agreement,

and a DOJ press release -- do not expressly or impliedly state that any of the movants are the subject of a grand jury investigation. Moreover, the news reports of imminent investigations do not change the analysis. The mere possibility that an individual is a subject of a grand jury investigation -- a matter that is unknown -- does not, under the law of this Circuit, prohibit the government from disclosing his name in other contexts, for disclosure of information that is only coincidentally before the grand jury (i.e, the name of a person of interest) is not prohibited by Rule 6(e) as long as it does not elucidate the inner workings of the grand jury. See In re Sealed Case, 192 F.3d at 1002 (discussed infra at 8).

The Court thus turns its attention to the relevant provisions of the Information, the plea agreement, and the DOJ press release. To begin with, the Information charging British Airways with two counts of conspiring to violate the Sherman Act, 15 U.S.C. § 1, does not identify any unindicted co-conspirators by name. It states only that: "individuals, not made defendants . . . participated as co-conspirators in the offense[s] charged . . . and performed acts and made statements in furtherance of it." Information ¶¶ 2, 14. The Information goes on to describe the conduct of the defendant and the "co-conspirators," but provides no indicia as to the identity of the co-conspirators. Movants contend that the Information implies that the co-conspirators are British Airways employees, but that reading makes little sense because a conspiracy consisting only of an employer and its employees does not violate Section 1 of the Sherman Act. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-72 (1984)).

More significantly, the plea agreement, which the Court has reviewed, does not identify the movants as co-conspirators, or otherwise describe them as facing grand jury investigation or criminal liability. It provides only that the listed individuals are excluded from the cooperation and non-prosecution provisions of the agreement, without explaining the basis for the exclusion.

4

The provisions in which the movants are named state, in full, as follows:

> 12.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo and/or passenger transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding").  The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:
>
> * * *
>
> (b)    using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States, but excluding [Name, Name, Name, Name, Name, Name, Name, Name, Name, and Name], including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.
>
> * * *
>
> 15.    The United States agrees to the following:
>
> (a) Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of the antitrust conspiracy involving the sale of international air cargo transportation services to and from the United State and/or passenger transportation services between the United States and the United Kingdom or undertaken in connection with any investigation of such a conspiracy ("Relevant Offense"), except that the protections granted in the paragraph shall not apply to [Name, Name, Name, Name, Name, Name, Name, Name, and Name].

See Plea Agreement ¶¶ 12, 15 (submitted to chambers on August 2, 2007).  No criminal accusations are made therein against the "carve out" employees, nor are the carve out employees described as the subjects of an investigation.  The words "investigation" and "grand jury" appear in these provisions, but only in the context of describing British Airways' duty to cooperate in "any other federal investigation" of the alleged antitrust violations described therein, including "the provision of testimony in grand jury . . . proceedings."  The plea agreement does not identify the persons who are the subject of any such investigation.

Movants contend, however, that these provisions of the plea agreement must be read in light of a press release issued by DOJ on August 1, 2007, and DOJ's representations on the meaning of "carve-out" status.  But the general reference in the press release to an "ongoing investigation" hardly amounts to an accusation of criminal wrongdoing by movants.  <u>See</u> Press Release, U.S. Department of Justice, "British Airways PLC and Korean Air Line Co. Ltd. Agree to Plead Guilty and Pay Criminal Fines Totaling $600 Million for Fixing Prices on Passenger and Cargo Flights" (Aug. 1, 2007) (available at http://www.usdoj.gov/atr/public/ press_releases/2007/224928.htm) ("Today's plea agreements are the first to arise from the Antitrust Division's ongoing investigation into the air transportation industry.").

Movants thus rely primarily on their argument that the "necessary implication" of carve out status is that they remain subjects of an ongoing grand jury investigation or that they were subjects of a grand jury investigation and were considered uncooperative.[2]  Pl.'s Mem. at 3.  The government responds that there are reasons, other than being an unindicted co-conspirator, that may result in an individual being carved of a corporate plea agreement, including the bare refusal of an individual to cooperate, the need to develop additional evidence, and DOJ's inability to locate an individual.  <u>See</u> Def.'s Mem. at 7.  This representation is supported by DOJ's public comments on the meaning of carve out status generally.  <u>See</u> Scott D. Hammond, Assistant Attorney General for Criminal Enforcement Antitrust Division, DOJ, <u>Measuring the Value of</u>

---

[2]  Plaintiff asserts that "[a]ccording to one of the Defendants, these 'carved out' individuals either remain subjects of the ongoing investigation before the grand jury or were subjects of the grand jury investigation and deemed uncooperative." Pl.'s Mem. at 4.  Plaintiff does not identify the defendant who made that statement, or cite any supporting evidence.  But even accepting that statement as true, the Court notes that no such statement appears on the face of plea agreement.  A disclosure by the government that the carved out individuals are or were in the past subjects of a grand jury investigation would, indeed, appear to violate Rule 6(e).  The flaw in this argument is that the plea agreement does not contain such a statement.

Second-In Cooperation in Corporate Plea Negotiations, Address at the 54th Annual American

Bar Ass'n Section of Antitrust Law Spring Meeting (Mar. 29, 2006), at 7-8 ("Hammond

Statement").  DOJ's comments do indeed indicate that culpability is one possible reason for

carving out an employee from a corporate plea agreement -- and one might infer that such

culpability would involve grand jury proceedings -- but the comments indicate several other

possible reasons also proffered by the government here.  Thus, the Court concludes that there is

no "necessary implication" from the carve out provision as to a grand jury investigation.  See

Crompton, 399 F. Supp. 2d at 1049 (explaining that naming a person as exempt from a

non-prosecution guarantee "indicate[s] that the non-prosecution protection of [the] Plea

Agreement does not apply to him and nothing more").[3]

       Movants' contention is implicitly premised on the concept that, if they are subjects of a

---

[3]  The Hammond comments state, in relevant part:

> Most corporate plea agreement provide a non-prosecution agreement for
> company employees who cooperate fully in the investigation.  Yet
> certain culpable employees, employees who refuse to cooperate, and
> employees against whom the Division is still developing evidence may
> not receive protection under the company plea agreement.  These
> individuals are often referred to as "carve outs," meaning they are
> excluded (or "carved out") of the company deal. Culpable carve outs
> must negotiate separate plea agreement or face indictment.  Most
> companies place a high value on minimizing the number of carve outs.

>        Second-in companies that cooperate early in an investigation
> often have the advantage of being able to offer new and significant
> evidence through multiple employees.  When this is the case, the
> Division will typically carve out only the highest culpable individuals as
> well as any employees who refuse to cooperate; mid-to-lower level
> employees who provide significant evidence furthering the investigation
> will be offered non-prosecution under the corporate plea agreement.  In
> addition, those employees who are carved out often are able to negotiate
> more favorable deals because they are in a position to offer valuable
> cooperation early on in an investigation.

Hammond Statement at 7-8.

grand jury investigation -- or have been in the past -- the government cannot disclose their names

in relation to the broader federal investigation, even where it discusses an aspect of the

investigation separate from grand jury proceedings.[4]  However, this Circuit has rejected that

position:

> [W]e have never read Rule 6(e) to require that a "veil of secrecy be drawn over all
> matters occurring in the world that happen to be investigated by a grand jury."
> Indeed, we have said that "[t]he disclosure of information 'coincidentally' before
> the grand jury [which can] be revealed in such a manner that its revelation would
> not elucidate the inner workings of the grand jury is not prohibited." . . .  The[]
> purposes [of Rule 6(e)], as well as the text of the Rule itself, reflect the need to
> preserve the secrecy of the <u>grand jury</u> proceedings themselves.  It is therefore
> necessary to differentiate between statements by a prosecutor's office with respect
> to its own investigation, and statements by a prosecutor's office with respect to a
> <u>grand jury's</u> investigation, a distinction of the utmost significance upon which
> several circuits have already remarked. . . .
>
> Information actually presented to the grand jury is core Rule 6(e) material
> that is afforded the broadest possible protection from disclosure. Prosecutors'
> statements about their investigation, however, implicate the Rule only when they
> directly reveal grand jury matters.

<u>In re Sealed Case</u>, 192 F.3d at 1001-02 (citations omitted).  Here, the carve out provisions of the

plea agreement do not reveal grand jury matters, but instead only that, as part of the prosecutor's

handling of the criminal case against British Airways, the ten identified employees will not be

covered by the non-prosecution provision of the agreement.  Thus, public disclosure of the carve

out names will not reveal "matter[s] before the grand jury" under Rule 6(e).[5]

---

[4]  Movants thus submitted a newspaper article today to document DOJ's reported intentions to
pursue criminal investigations of senior British Airways staff next week.  <u>See</u> Pl.'s Mem. in support of
Mot. to Insert a Footnote into Its Reply Mem. at 2 (citing Dan Milmo, "Top BA Staff Face Criminal
Inquiry in Price-Fixing Case," The Guardian, Aug. 18, 2007);

[5]  Indeed, the D.C. Circuit in <u>In re Sealed Case</u> went on to note with approval the Fifth Circuit's
observation that "'[a] discussion of actions taken by government attorneys or officials -- <u>e.g.</u>, a
recommendation by the Justice Department attorneys to department officials that an indictment be sought
against an individual -- does not reveal any information about matters occurring before the grand jury.
Nor does a statement of opinion as to an individual's potential criminal liability violate the dictates of
Rule 6(e).'" <u>In re Sealed Case</u>, 192 F.3d at 1003 (quoting <u>In re Grand Jury Investigation (Lance)</u>, 610
F.2d 202, 217 (5th Cir. 1980)).

The Court turns next to plaintiff's contention that disclosure of his name in the plea agreement will violate his right to due process under the Fifth Amendment. The Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication. See, e.g., In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981) (citing United States v. Briggs, 514 F.2d 794, 802-06 (5th Cir. 1975)); United States v. Anderson, 55 F. Supp. 2d 1163, 1168-69 (D. Kan. 1999); see also Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("[W]here the state attaches a 'badge of infamy' to the citizen, due process comes into play."). The more typical case involves an aggrieved person seeking to expunge an indictment revealing his identity as an unindicted co-conspirator; courts generally have found such disclosures to violate the due process rights of the person revealed. See Briggs, 514 F.2d at 802-06; United States v. Chadwick, 556 F.2d 450, 450 (9th Cir. 1977); Application of Jordan, 439 F. Supp. 199, 204-09 (S.D.W.Va. 1977). However, due process protection is not limited to accusations against the uncharged in an indictment, but rather extends to other criminal accusations made by a government attorney, including accusations in factual proffers and other court memoranda. See In re Smith, 656 F.2d at 1106 (explaining that "in Briggs, [the court] found that the liberty and property concepts of the Fifth Amendment protect an individual from being publicly and officially accused of having committed a serious crime," and that this holding extended to statements made by government counsel at a plea hearing); Anderson, 55 F. Supp. 2d at 1167 ("In Smith, the Fifth Circuit extended the Briggs rule well beyond the grand jury context, and ordered other court filings and records naming an unindicted co-conspirator sealed and struck."). The government does not take issue with this basic principle -- indeed, its primary case acknowledges this principle as correct. See United States v. Crompton, 399 F. Supp. 2d 1047, 1049 (N.D. Cal. 2005) (finding no due process violation where "the Plea Agreement does not allege criminal activity on [the movant's]

part nor does it implicate [the movant] in any wrong-doing").  Instead, the government disputes the movants' characterization of the plea agreement and DOJ statements as effectively identifying movants as unindicted co-conspirators

The Court has reviewed the provisions of the Information filed against British Airways, the plea agreement, and the DOJ press release.  Supra at 3-6.  As noted earlier, none of those documents identifies movants as co-conspirators, or otherwise describes them as facing grand jury investigation or criminal liability.  Because there are non-criminal culpability reasons that may give rise to carve out status, an employee's carve out status does not mean, expressly or impliedly, that he has engaged in criminal wrongdoing.  Crompton, 399 F. Supp. 2d at 1049.  Movants' reliance on newspaper articles elaborating on the status of DOJ's investigation to support its characterization of carve out status is fundamentally flawed.  It makes no sense to base interpretation of the terms of a plea agreement on news accounts, the accuracy of which cannot be verified by the Court.

Movants also contend that the government's disclosure of their names in the plea agreement is in violation of the United States Attorneys' Manual ("USAM") directive stating that "in the absence of some significant justification, it is not appropriate to identify . . . a third-party wrongdoer unless that party has been officially charged with the misconduct at issue."  See Pl.'s Mem. at 13 (quoting USAM § 9-27.760).  But as the Court explained above, the language of the plea agreement does not, either expressly or impliedly, describe the movants as engaging in any wrongdoing.[6]

---

[6]  In any event, the USAM specifies that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."  See USAM § 1-1.100 (available at http://www.usdoj.gov/usao/eousa/ foia_reading_room/usam/index.html).

Having concluded that plaintiff has no likelihood of success on the merits, the Court finds it unnecessary to weight the remaining preliminary injunction factors.  The Court notes, however, that there are significant public interests in full disclosure of the plea agreement -- the right of the public and the press to have access to court proceedings (see Washington Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991)) and the victims' right of access to the terms of a plea agreement under the Crime Victim Rights Act, 18 U.S.C. § 3771.

## CONCLUSION

For the foregoing reasons, the Court will grant the pending motions to intervene, but movants' application for temporary restraining order and preliminary injunction will be denied. In light of that denial, the Court anticipates that it will deny the pending motions to proceed pseudonymously and to seal the movants' identities, but will delay formal action on those motions until the conclusion of the plea hearing in United States v. British Airways PLC, Cr. No. 07-183. A separate order will be issued on this date.


                                        /s/
                                JOHN D. BATES
                                United States District Judge


Date:    August 22, 2007